UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ELIJAH SADDLER,<br><br>      Petitioner,<br><br> v.<br><br>MICHAEL S. EVANS, Warden, et al.,<br><br>      Respondents. | CASE NO: 09-CV-2067 W (JMA)<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION, (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (3) DENYING CERTIFICATE OF APPEALABILITY** |

  On September 22, 2009, Petitioner Daniel Elijah Saddler, a state prisoner, commenced by and through his attorney, Lauren E. Eskenazi-Ihrig, this habeas corpus petition pursuant to 28 U.S.C. § 2254 (the "Petition"). Petitioner challenges his convictions in the San Diego Superior Court for infliction of corporal injury upon a cohabitant and assault by means likely to produce great bodily injury.

  On December 20, 2011, United States Magistrate Judge Jan Adler issued a Report and Recommendation ("Report") recommending the denial of the Petition. On January 20, 2012, Petitioner filed objections to the Report.

The matter being fully briefed, the Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For reasons stated below, the Court **ADOPTS** the Report [Doc. 40] and **DENIES** the Petition [Doc. 1].

I.    BACKGROUND

On February 10, 2006, a jury found Petitioner guilty of infliction of corporal injury upon a cohabitant, Victoria Saddler, and assault by means likely to produce great bodily injury. The jury also found Petitioner had personally inflicted great bodily injury upon Victoria as to both counts. In a bifurcated trial, the court found allegations of Petitioner's prior serious felony conviction, prior strike conviction, and two prior denials of probation to be true. Petitioner was sentenced to eight years in prison for infliction of corporal injury upon a cohabitant, plus five years for the prior felony enhancement and five years for the great bodily injury enhancement, for a total of eighteen years. The court stayed imposition of the sentence for assault likely to produce great bodily injury under California Penal Code § 654.

On March 13, 2008, the California Court of Appeal reversed the five-year great bodily injury enhancement, because it was based on a fact not found true by the jury beyond a reasonable doubt. On June 16, 2008, the California Supreme Court denied Petitioner's petition for review. On September 9, 2009, Petitioner filed a writ of habeas corpus in the California Supreme Court, which ultimately denied the writ without comment or citation on April 14, 2010.

Meanwhile, on September 22, 2009, Petitioner filed the present Petition in this Court, along with a motion to stay the federal proceedings while the California Supreme Court considered his habeas petition. On March 8, 2009, this Court granted the stay. Following the California Supreme Court's denial of the petition, this Court lifted the stay. On December 20, 2011, Magistrate Judge Adler issued the Report recommending the Court deny the Petition. On January 20, 2012, Petitioner filed objections to the Report (the "Objections").

## II. LEGAL STANDARD

The duties of the district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court "must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); see also United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989); United States v. Raddatz, 447 U.S. 667, 676 (1980). When no objections are filed, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. See Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974). Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden to give de novo review to factual findings; conclusions of law must still be reviewed de novo." Barilla v. Ervin, 886 F.2d 1514, 1518 (9th Cir. 1989) (citing Britt v. Simi Valley Unified Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983)).

## III. SCOPE OF REVIEW

The Petition is governed by Title 28, United States Code, § 2254(d), as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"). The statute sets forth the following scope of review for federal habeas corpus claims:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" Supreme Court authority if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application of" Supreme Court authority if it identifies the correct governing legal principle from the Supreme Court's decisions, but "unreasonably applies that principle to the facts of the prisoner's case." Id.

This Court gives deference to state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e)(1). If the state supreme court silently summarily denies a petitioner's appeal, the reviewing court looks through to the last reasoned decision. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); see also Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

## IV. DISCUSSION

Petitioner seeks habeas corpus relief premised on eight grounds: (1) actual innocence; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; (4) violation of the Confrontation Clause based on admitted statements of an unidentified man; (5) failure to instruct; (6) imposition of the upper term sentence; (7) double jeopardy; and (8) cumulative error.

Having read and considered the underlying Petition, the Report, and Petitioner's Objections thereto, the Court finds that the Report presents a well-reasoned analysis

of the issues. Accordingly, for the reasons stated below, the Court will accept the Report's recommendations and deny the Petition.

### A. <u>Actual Innocence</u>

The Court agrees with the Report that (1) Petitioner's actual-innocense claim is not a ground for federal habeas relief, and (2) even if the claim was cognizable, Petitioner did not affirmatively prove he is likely innocent.

First, the Supreme Court has not established the existence of a freestanding actual-innocense claim. <u>District Attorney's Office for Third Judicial District v. Osborne</u>, 557 U.S. 52, 71 (2009). <u>See</u> 28 U.S.C. § 2254(d)(1); <u>Williams</u>, 529 U.S. at 413. Absent Supreme Court authority establishing such a claim is cognizable on federal habeas review, the California Supreme Court's rejection of Petitioner's claim cannot be contrary to, or an unreasonable application of, clearly established Supreme Court law. <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006).

Second, even assuming such a claim exists, it is subject to an "extraordinarily high" threshold showing. <u>See</u> <u>Osborne</u>, 557 U.S. at 71. Based on the record before the Court, Petitioner has not satisfied the required showing.

In support of the claim that he is innocent, Petitioner relies on the declaration of Larissa Mitchell, in which she claims she committed the crime. (*Pet'r's Obj.* 4-5.) Larissa's confession after Petitioner was convicted, however, is insufficient to overcome the substantial evidence presented at trial that Petitioner assaulted Victoria. And Petitioner's guilt is further supported by his and Victoria's inconsistent and evolving explanations about the assault and Victoria's injuries. As such, the California Supreme Court reasonably concluded that Petitioner had not stated a prima facie case for relief.

### B. <u>Prosecutorial Misconduct</u>

The Court agrees with the Report that Petitioner has not shown that the prosecutor's conduct rose to the level of a due-process violation.

Prosecutorial misconduct occurs when the prosecutor's actions "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainright, 477 U.S. 169, 181 (1986). The presentation of conflicting versions of events, without more, does not constitute knowing presentation of false evidence. United States v. Geston, 299 F.3d 1130, 1135 (9th Cir. 2002). Rather, the deliberate use of false evidence requires three things: (1) the testimony or evidence must be false; (2) the prosecution knew or should have known it was false; and (3) the evidence must be material. See Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005).

Petitioner advances two theories in support of prosecutorial misconduct. The first is based on Dr. Jack Yang's testimony that Victoria's scan and x-rays revealed fractures to her vertebrae on the left and right side, among other things. Petitioner argues that because Dr. Yang did not specify whether the fractures were "transverse process" fractures (which are less severe) or "vertebrae body" fractures (which are more severe), the prosecution presented false evidence.

But there is no dispute that the radiologist's report concluded that Victoria suffered "L1 through L14 transverse process fractures." Dr. Yang's testimony that there were fractures to her vertebrae was, therefore, consistent with the report and the prosecutor did not present false evidence.

Petitioner also asserts that the prosecutor committed misconduct by mischaracterizing Victoria's injuries in closing arguments. A prosecutor may argue reasonable inferences drawn from the evidence presented, and any alleged improper comments must be "viewed within the context of the entire trial" to determine whether a constitutional error has occurred. United States v. Young, 470 U.S. 1, 8, n.5, 11 (1985); Ceja v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996).

Here, the prosecutor mentioned Victoria's spinal injuries twice during closing argument. The prosecutor summarized Dr. Yang's testimony and submitted to the jury that Victoria's injuries, taken as a whole, constituted great bodily injury. These are

reasonable inferences drawn from the evidence. Petitioner, therefore, has failed to show that the prosecutor's comments or conduct amounted to a due-process violation.

Because the Court has rejected Petitioner's individual prosecutorial-misconduct claims, Petitioner's contention that the cumulative effect of the prosecutorial misconduct violated his due-process rights also lacks merit.

### C.   **Ineffective Assistance of Counsel**

A claim for ineffective assistance of counsel requires a petitioner to establish two things: (1) trial counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). If the claim can be resolved on the ground of lack of sufficient prejudice, the court need not address the deficient performance prong. Id. at 697.

Here, Petitioner alleges six theories in support of his ineffective assistance of counsel claim. The Court agrees with the Report that because there is no reasonable probability the jury would have a reached a more favorable result, Petitioner's trial counsel's actions were neither deficient nor prejudicial.

#### *1.   Failure to Find Larissa Mitchell*

Petitioner argues trial counsel was ineffective because counsel failed to locate Larissa Mitchell and present Mitchell's testimony that she assaulted Victoria. An alleged failure to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 691; see also Silva v. Woodford, 279 F.3d 825, 836 (9th Cir. 2002).

Here, Petitioner does not allege trial counsel *failed to investigate* the claim that Victoria was assaulted by another women, only that counsel failed to locate Larissa. But there is no dispute that counsel had very little information on Victoria's alleged female attacker. And given that Petitioner knew Larissa very well (according to Larissa,

the two were in a relationship for several weeks) yet he never revealed to counsel that he knew Victoria's attacker, the Court finds this claim particularly absurd. Moreover, given the substantial evidence that Petitioner caused Victoria's injuries, the Court finds Petitioner has not shown that trial counsel's performance was deficient or prejudicial.

### 2. *Failure to Present Evidence of Thumb Surgery*

Petitioner asserts that trial counsel rendered ineffective assistance of counsel by failing to present corroborating evidence that he was left-handed and recovering from thumb surgery when the incident took place. Petitioner asserts that such evidence would have showed that it was impossible for him to commit the crime.

But there is no dispute that the jury heard testimony that Petitioner was left handed and had broken his left thumb in May 2005, before the incident. Additionally, there is no dispute that the prosecution never disputed these facts. Accordingly, there was no need for defense counsel to present corroborating evidence on these matters and counsel's performance was, therefore, not deficient or unreasonable.

Furthermore, because Petitioner has failed to demonstrate a "reasonable probability" that the introduction of this corroborating evidence would have affected the trial's outcome, Petitioner has also failed to show that defense counsel's performance was prejudicial. See Strickland, 466 U.S. at 694.

### 3. *Failure to Present Evidence of Motel Stay*

Petitioner contends that trial counsel was ineffective because counsel did not present evidence of Petitioner's motel stay with Victoria, which he contends would have strengthened Victoria's testimony that the two were on loving terms. However, the prosecution never contested Victoria's testimony or the motel stay. And the introduction of the motel receipt does little to undermine the evidence that Petitioner assaulted Victoria. Additionally, the fact that Petitioner and Victoria may have shared a romantic night at the motel was negated by Victoria's testimony that the next

morning—on the day of the assault—she and Petitioner got into a disagreement during which he threw and broke Victoria's phone. Thus, Petitioner has failed to demonstrate that introduction of the motel receipt would have had any bearing on the outcome of trial.

### 4. <u>Failure to Impeach Marqueta Rodgers</u>

Petitioner argues trial counsel was ineffective because counsel did not cross-examine Marqueta Rodgers about her purported history of domestic abuse, which Petitioner claims would have shown her bias against Petitioner. (*Pet'r's Obj.* 12.)

But during cross-examination, defense counsel challenged Rodgers's credibility by questioning her extensively on alleged inconsistencies between her initial statement to law enforcement and her trial testimony. Had defense counsel brought up Rodgers's history of domestic abuse, it is possible the jury could have viewed Rodgers as more credible or the jury could have become sympathetic of Rodgers. Under these circumstances, the Court finds counsel did not act unreasonably. <u>Cullen v. Pinholster</u>, – U.S. –, 131 S. Ct. 1388, 1406 (2011) (Defense counsel is afforded "wide latitude ... in making tactical decisions.").

Nor is there any reason to believe that questioning Rodgers on her past would have changed the outcome of trial. There was no evidence that Rodgers knew Petitioner or had any motivation to lie about seeing him—a perfect stranger—assault Victoria. Moreover, there was substantial evidence against Petitioner that corroborated Rodgers's testimony, including the inconsistent stories by Victoria and Petitioner, the testimony of other witnesses, and Victoria's physical injuries. Given the possibility that Rodgers' testimony could actually hurt Petitioner's case, trial counsel's decision not to question Rodgers about being the victim of domestic violence was a reasonable tactical decision.

//
//

5. *Failure to Request Jury Instruction on "Accident"*

Petitioner contends trial counsel rendered ineffective assistance by failing to request jury instructions on "accident." But this instruction was inconsistent with Petitioner's defense theory, which was that he did not assault Victoria and that her injuries were caused by a stranger who simply approached Victoria and began beating her. Counsel's failure to seek jury instructions inconsistent with his reasonable choice of defense does not amount to ineffective assistance of counsel. Butcher v. Marquez, 758 F.2d 373, 376-77 (9th Cir. 1985).

Moreover, none of the evidence presented at trial supported the theory that Petitioner "accidently" injured Victoria. Indeed, Victoria testified that Petitioner did not hit or cause her injuries. Thus, not only would the jury instruction on "accident" be at odds with the defense's theory, but the jury instruction would not have had any evidentiary support. And in California, the court is not required to instruct juries on theories that lack substantial evidentiary support. People v. Manriquez, 37 Cal. 4th 547, 587-88 (2005).

Likewise, at the appellate level, Petitioner cannot argue that counsel was ineffective in failing to raise the issue, because failing to raise a meritless argument on appeal does not constitute deficient performance or prejudice. See Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001). As defense counsel's performance was not deficient or prejudicial, Petitioner's claim is without merit.

6. *Failure to Present Evidence that Victoria's Injuries Were Minor and Failure to Object to Improper Argument*

Lastly, Petitioner claims trial counsel provided ineffective assistance by failing to assert that Victoria's injuries were minor and failing to object to the prosecution's closing argument regarding Victoria's spinal fractures.

Once counsel reasonably chooses a defense, he is not required to present alternative or inconsistent defenses. Turk v. White, 116 F.3d 1264, 1266-67 (9th Cir.

1997). Here, trial counsel decided to pursue the defense that Petitioner was not guilty, in conformity with Victoria's testimony that Petitioner never physically abused her. If defense counsel had called additional experts to testify about the severity of Victoria's injuries, the jury could have gotten distracted from the primary defense and there would be no guarantee the experts would classify Victoria's injuries as minor. Defense counsel, therefore, exercised reasonable judgment in abstaining from presenting additional evidence on Victoria's injuries.

Similarly, trial counsel did not act unreasonably or prejudice Petitioner's case by failing to object to the prosecutor's closing comment. As discussed above, the prosecutor did not commit misconduct. Accordingly, trial counsel's failure to make a futile objection was neither deficient nor prejudicial. See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

### D. Statements of an Unidentified Man

This Court agrees with the Report that the statements of the unidentified man were non-testimonial in nature and, therefore, admissible in court.

The Confrontation Clause of the Sixth Amendment bars the admission of testimonial statements made by individuals not subject to cross-examination. Crawford v. Washington, 541 U.S. 36, 68-69 (2004). In evaluating whether a statement made during police interrogation is testimonial, courts consider if: (1) the person is speaking of events that are actually happening, versus describing the past; (2) the person is facing an ongoing emergency; (3) the nature of what was asked, viewed objectively, was such that the "elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past"; and (4) the interview was informal, versus formal. See Davis v. Washington, 547 U.S. 813, 827 (2006). "The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into

account in determining whether an interrogation is testimonial." <u>Michigan v. Bryant</u>, – U.S. –, 131 S.Ct. 1143, 1162 (2011).

Here, Petitioner argues that the statements of the unidentified man were testimonial, because there was no ongoing emergency. In support of this argument, Petitioner cites the fact that Officer Cupples did not use his siren, did not call for back-up, and drove 30 miles per hour to the scene. (*See Pet'r's Obj.* 14.) But the manner in which Officer Cupples approached the scene does not negate his or the witness's perception of an ongoing emergency, particularly given that Officer Cupples was only 8 blocks from the location where the witness observed Petitioner beating Victoria. Given this short distance, Officer Cupples would not have arrived much sooner to the scene by driving faster (and potentially endangering the public) with sirens blaring (potentially alerting Petitioner to his approach).

Moreover, the unidentified man's statements and Officer Cupples's behavior suggest that their primary concern was to end a threatening situation occurring in the present, rather than to discuss past events. Specifically, the man hurriedly approached Officer Cupples's car and described the ongoing assault, giving a sense of urgency. The conversation was extremely brief and informal, with Officer Cupples not asking the man any additional questions. Given these circumstances, the main purpose of the man's statements were to alert Officer Cupples of an emergency. Thus, the statements were reasonably considered non-testimonial and properly admitted in trial.

### E.  **Failure to Give Unanimity Instruction**

The Court agrees with the Report that the trial court was not required to instruct the jury that it needed to agree unanimously on the great bodily injury allegations.

For a federal court to grant habeas relief on the basis of instructional error, a petitioner must show that the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973). It is not enough for the instruction to be "undesirable, erroneous or even

'universally condemned.'" Id. at 146.  The error must have had a substantial and injurious effect on the jury's determination. Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008).

Petitioner claims that the trial court should have instructed the jury sua sponte that they must unanimously find the great bodily injury enhancements to be true. Petitioner's argument fails for two reasons.

First, a state criminal defendant does not have a federal constitutional right to a unanimous verdict in a non-capital trial. Johnson v. Louisiana, 406 U.S. 356, 359 (1972).  Furthermore, when a single crime can be committed by various means, the jury need not unanimously agree on which means were used, as long as they agree that the crime was committed. Schad v. Arizona, 501 U.S. 624, 631-32 (1991).  Accordingly, because Petitioner had no federal constitutional right to a unanimity instruction regarding the great bodily injury enhancements for spousal abuse, the state court did not violate Petitioner's right to due process.

Second, in California, the crime of spousal abuse need not be prosecuted as a single act offense, but rather may be prosecuted as a continuous course of conduct. See People v. Healy, 14 Cal. App. 4th 1137, 1139-40 (1993); see also People v. Thompson, 160 Cal. App. 3d 220, 224-25 (1984). Where the statutes at issue contemplate a continuous course of conduct based on a series of acts committed over a period of time, the court is not required to give a unanimity instruction. People v. Napoles, 104 Cal. App. 4th 108, 115 (2002). In this case, the prosecution consistently pursued the theory that Petitioner engaged in an ongoing course of physical abuse, which resulted in Victoria's injuries. For this additional reason, the trial court was not required to provide the jury with a unanimity instruction and, therefore, did not violate Petitioner's right to due process.

//

//

### F.     Imposition of the Upper Term on Abuse Charge

The Court agrees with the Report that the trial court's imposition of the aggravated term did not violate Petitioner's Sixth Amendment rights.

The Constitution allows the trial court to consider various aggravating circumstances in exercising its discretion to decide on the appropriate prison term, as long as the facts that make a defendant eligible for an increased sentence have been established consistently with the Sixth Amendment. People v. Black, 41 Cal. 4th 799, 813 (2007). In California, the presence of one aggravating circumstance is legally sufficient to impose a higher term. Id. Similarly, the Ninth Circuit has found that "if at least one of the aggravating factors upon which the judge relied in sentencing . . . was established in a manner consistent with the Sixth Amendment, [a] sentence does not violate the Constitution." Butler v. Curry, 528 F.3d 624, 643 (9th Cir. 2008).

Petitioner argues that the trial court's imposition of the upper term violated his Sixth Amendment right to have every fact which elevates the maximum prison term to be found by a jury beyond a reasonable doubt. See Cunningham v. California, 549 U.S. 270, 288-89 (2007). But the jury found Petitioner guilty of infliction of corporal injury and assault by means likely to result in great bodily injury, and the trial court relied on these findings of fact when imposing the enhancements. Additionally, the trial court considered Petitioner's recidivism and prior criminal history, and looked to the California Rules of Court 4.421(a)(1) and (b)(1)-(3), which state that crimes of great bodily injury and defendants with prior criminal convictions are circumstances in aggravation. Therefore, the imposition of the upper term did not violate Petitioner's Sixth Amendment rights.

Moreover, assuming the court's imposition of the upper term did violate Cunningham, the error was harmless. The court must determine whether "the error had a substantial and injurious effect on [Petitioner's] sentence." See Butler, 528 F.3d at 648. The court must grant relief only if there is "grave doubt" as to whether a jury could have found the aggravating circumstances to be true beyond a reasonable doubt.

Id. Here, the jury found Petitioner guilty of infliction of great bodily injury, and this Court is confident the jury would have found at least one of the aggravating circumstances true beyond a reasonable doubt. Thus, any Cunningham violation would be harmless.

### G. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment guards against multiple punishments for the same offense. Two criminal acts do not constitute the "same offense" if each act or offense "requires proof of a fact which the other does not," and the question whether punishments are "multiple" depends mostly on legislative intent. Blockburger v. United States, 284 U.S. 299, 304 (1932); Ohio v. Johnson, 467 U.S. 493, 499 (1984). Where the legislature specifically allows multiple punishments under two separate statutes, sentencing enhancements based on the offender's conduct do not violate double jeopardy principles. Missouri v. Hunter, 459 U.S. 359, 368 (1983); Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).

The California Penal Code provides for multiple convictions based on a single act or continuous course of conduct while protecting against multiple punishments. Cal. Penal Code §§ 954, 654. If the prosecution alleges multiple offenses arising out of the same act or course of conduct, the defendant may be convicted of any number of the offenses charged. Cal. Penal Code § 954. "Multiple charges and multiple convictions can be based on a single criminal act, if the charges allege separate offenses" and the multiple convictions are not for necessarily included offenses. People v. Coyle, 178 Cal. App. 4th 209, 217 (2009); People v. Reed, 38 Cal. 4th 1224, 1227 (2006).

Additionally, the California Supreme Court has rejected a double jeopardy challenge to multiple convictions stemming from a charge of domestic violence. See People v. Sloan, 42 Cal. 4th 110, 119 (2007). Assault by means of force likely to produce great bodily injury is not a lesser included offense of willful infliction of corporal injury on a spouse. Id. at 117, 119. As the California Supreme Court concluded, the

1  "Legislature has made clear that a defendant may be convicted of more than one
2  offense even if they arise out of the same act or course of conduct." Id.  Therefore,
3  Petitioner's multiple convictions do not violate the Double Jeopardy Clause of the Fifth
4  Amendment.

### H.  Cumulative Error

The Court agrees with the Report that Petitioner has not been deprived of due process and a fair trial as a result of cumulative error. While any single error alone may not deprive a defendant of due process, the cumulative effect of errors considered together may deny a defendant due process. See Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000). Here, however, this Court has concluded that there were no errors of constitutional magnitude throughout Petitioner's trial. Accordingly, Petitioner is not entitled to relief as to this claim.

### I.  Request to Hold Evidentiary Hearing.

Petitioner requests an evidentiary hearing to resolve factual disputes with regard to his ineffective assistance of counsel claim.[1]

Where habeas claims have been decided on their merits in state court, a federal court's review under section 2254(d)(1) must be confined to the record that was before the state court. Cullen v. Pinholster, 563 U.S. –, 131 S.Ct. 1388, 1398 (2011). Because none of Petitioner's claims survive review under section 2254(d)(1), Petitioner is not entitled to an evidentiary hearing. Id. at 1399–1400.

//
//

---

[1] Petitioner also sought to expand the record to include Exhibits A–N. Because the exhibits were already part of the record and considered by Judge Adler, on March 7, 2012, this Court found the request moot. (*See Order* [Doc. 43], 1:27–2:4.)

1  V.   CONCLUSION AND ORDER

2       In light of the foregoing, the Court **ADOPTS** the reasoning and findings in the
3  Report [Doc. 40], and **DENIES** the Petition [Doc. 1].
4       Moreover, because reasonable jurists would not find the Court's assessment of the
5  claims debatable or wrong, the Court **DENIES** a certificate of appealability. See <u>Slack</u>
6  <u>v. McDaniel</u>, 529 U.S. 473, 484 (2000). The Clerk of the Court shall close the district
7  court file.
8       **IT IS SO ORDERED.**

10 **DATED: September 24, 2012**

12              Hon. Thomas J. Whelan
                United States District Judge